ANDREW S. AZARMI (SBN 241407)
andrew.azarmi@dentons.com
DENTONS US LLP
One Market Plaza
Spear Tower, 24th Floor
San Francisco, California 94105
Telephone:      415.267.4000
Facsimile:      415.267.4198

Attorneys for Defendants ECC CENTCOM
Constructors, LLC and ECC International, LLC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| ECC INTERNATIONAL, LLC and ECC CENTCOM CONSTRUCTORS, LLC, <br><br> Petitioners, <br><br> v. <br><br> ASPIC ENGINEERING AND CONSTURCTION COMPANY, <br><br> Respondent. | Case No. 4:17-CV-00224-YGR <br><br> **REPLY IN SUPPORT OF MOTION TO VACATE FINAL ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 10; MEMORANDUM AND POINTS OF AUTHORITY** <br><br> Hearing Date: March 28, 2017 <br> Time: 2:00 pm <br> Courtroom: 1 <br> Judge: Hon. Yvonne Gonzalez Rogers |

The Arbitrator exceeded his power when issuing the arbitration award because the Arbitrator recognized the parties' subcontracts bound Plaintiff and Arbitration-Claimant, Aspic Engineering and Construction Company ("Aspic"), to a number of federal contracting requirements but refused to hold Aspic to these terms.   The Arbitrator also engaged in misbehavior that prejudiced Defendants and Arbitration-Respondents, ECC CENTCOM Constructors, LLC and ECC International, LLC (collectively "ECC"), because the Arbitrator considered a matter that was not raised or briefed by either party and awarded damages on amounts that Aspic expressly waived.  Accordingly, the Court should grant ECC's Motion to Vacate the Arbitration Award (ECF No. 19) under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") and its implementing provisions in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.

## I.      STANDARD OF REVIEW

Enforcement of the arbitration award is governed by the New York Convention and the FAA—not California state law.  The FAA provides that an "arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the [New York] Convention."  9 U.S.C. § 202.  The sole limitation is that an award between two United States citizens does not fall under the New York Convention unless the relationship envisages performance abroad or has some relationship to a foreign state.  *Id.*

Applying this provision, the Ninth Circuit held in order for the Convention to apply, the arbitral award: (1) must arise out of a legal relationship (2) which is commercial in nature and (3) which is not entirely domestic in scope.  *Ministry of Def. of Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1362 (9th Cir. 1989).  Subsequent decisions confirm the New York Convention applies to awards issued in the United States under domestic law.  *LaPine v. Kyocera Corp.*, No. C 07-06132 MHP, 2008 WL 2168914, at *3 (N.D. Cal. May 23, 2008); *see also Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte*, 141 F.3d 1434, 1440 (11th Cir.1998) (arbitral award made in the United States, under American law, fell under Convention because one party was a German

1

1   corporation); *Lander Co., Inc. v. MMP Investments, Inc.*, 107 F.3d 476 (7th Cir.1997) (arbitral

2   award made in the United States between two domestic corporations involving distribution of

3   shampoo in Poland fell under Convention).  The undisputed facts in this case confirm Aspic is a

4   citizen of Afghanistan and that the parties' subcontracts were for construction services in

5   Afghanistan.

6       Aspic provides no basis for the Court to deviate from the FAA's plain language and the

7   substantial weight of binding and persuasive authority confirming the New York Convention and

8   the implementing provisions in the FAA apply to this case.

9   **II.    ARGUMENT**

10      Notwithstanding Aspic's assertions to the contrary, ECC does not seek vacatur based

11  merely upon alleged error in the Arbitrator's legal or factual conclusions.  This form of review is

12  not permitted under the FAA—a position ECC explicitly acknowledges in its opposition to

13  Aspic's request that the Court overturn the Arbitrator's decision that Aspic was not the "prevailing

14  party" and not entitled to attorney's fees (ECF No. 18).  Instead, ECC requests vacatur of the

15  arbitration award because the Arbitrator made three significant errors that warrant vacatur under

16  the FAA.

17      First, the Arbitrator exceeded his powers by issuing a decision that manifestly disregarded

18  the law by straying from an interpretation and application of the parties' agreements and instead

19  dispensing his own brand of industrial justice.  Second, the Arbitrator issued a decision that is

20  contradicted by undisputed facts and unambiguous regulations when he permitted the use of a

21  "total inventory" method for determining Aspic's termination costs.  And third, the Arbitrator

22  engaged in misbehavior that prejudiced ECC because the Arbitrator: (1) based his decision on an

23  issue that was not submitted to him but raised *sua sponte* without providing an opportunity to hear

24  evidence or argument on the issue; and (2) included damages in his award that Aspic waived.

25  These three errors, combined with the fact that Aspic also asserts the Arbitrator failed to base his

26  decision on the parties' subcontracts (on different grounds), justify the application of the

27

28

"extraordinary" relief of vacating the arbitration award pursuant to the New York Convention and the FAA.

### A.   The Arbitrator Exceeded His Powers By Manifestly Disregarding the Law and Dispensing His Own Brand of Justice

The Arbitrator exceeded his powers because the arbitral award deviated from an interpretation of the parties' subcontracts and, instead, reflected the Arbitrator's "own brand of industrial justice." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671–72 (2010) (the task of an arbitrator is to interpret and enforce a contract, not to make public policy). Specifically, the Arbitrator ignored the subcontracts' terms in order to avoid what he perceived to be an injustice. The award, therefore, should be vacated. *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983).

In order to resolve this issue, the Court need only look to the arbitral award itself. The Arbitrator recognized that the subcontracts required "the same level of precision and adherence to Federal procedures from ASPIC as ECC had toward the USACE through the pass through provisions of the agreements." Interim Award at 2 (ECF No. 20-6). Aspic, however, was not held to this "same level of prevision and adherence to Federal procedures." Instead, the arbitral award concludes that it was "unreasonable" for ECC to expect Aspic to comply with these terms. *Id.* This is precisely the circumstance of an arbitrator not providing an interpretation of the contract and instead following his own "whims or biases" that the Ninth Circuit concluded warrants vacatur. *Garvey v. Roberts*, 203 F.3d 580, 588–89 (9th Cir. 2000) ("We overturn an arbitrator's award only when it is clear from the arbitral opinion or award that the arbitrator did not base his decision on an interpretation of the [contractual documents] or that he disregarded what the parties put before him and instead followed his own whims or biases").

Aspic's Response in Opposition to the Motion to Vacate (ECF No. 27) asserts that ECC is merely trying to engage the Court in a review of the Arbitrator's legal analysis. This is incorrect. ECC does complain that the Arbitrator failed to properly interpret the subcontracts. To the contrary, the Arbitrator correctly understood that the subcontracts "included very detailed provisions relating to Federal regulations governing the work" that required "the same level of

precision and adherence to Federal procedures from ASPIC as ECC had toward the USACE through the pass through provisions of the agreements."  Interim Award at 2.  The Arbitrator's error warranting vacatur is that he correctly recognized this requirement but simply refused to enforce these provisions.

It is telling that Aspic's response essentially ignores the Arbitrator's decision despite the fact that the decision is the focal point for determining whether the Arbitrator manifestly disregarded the law.  *Garvey*, 203 F.3d at 588–89.  Instead, Aspic devotes the majority of its response to restate its argument that the Federal Acquisition Regulation ("FAR") clauses regarding termination for convenience are not applicable to subcontractors.  Resp. at 10-12.  Critically, this argument was explicitly rejected by the Arbitrator (and is directly contradicted by the parties' subcontracts) when he concluded the subcontracts required "adherence to Federal procedures."  Interim Award at 2.

The arbitral award demonstrates the Arbitrator improperly dispensed his own brand of industrial justice when he recognized the subcontracts required Aspic to comply with federal contracting requirements but refused to enforce these requirements to reach what the Arbitrator felt was a "fair" result.  The Court should vacate the arbitral award.

**B.**  **The Arbitrator Exceeded His Power When He Determined the Inventory Method Applied to Determine Aspic's Termination Costs**

The Arbitrator exceeded his powers when he made a legal decision that is legally irreconcilable with the undisputed facts.  *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003).  As explained in greater detail in the Motion to Vacate the Arbitration Award, it is undisputed that: (1) the subcontracts were for construction services; (2) the subcontracts incorporated by reference the terms of FAR subpart 49.2; and (3) FAR § 49.206-2(b)(4)(i) requires the use of the "total cost" method for construction contracts that are terminated for convenience.  Accordingly, the undisputed facts confirm that Aspic was required to use the "total cost" methodology to determine its termination costs—not the "inventory method."  The Arbitrator's conclusion to the contrary is legally irreconcilable with these facts and, therefore, exceeds his powers.

Aspic's response asserts that FAR subpart 49.2 is not applicable to the subcontracts and to the extent it does apply, the inventory method is "preferred" under FAR subpart 49.2.  Both assertions are incorrect.  First, the subcontracts expressly state that "the rights and remedies of the Parties shall be governed by applicable Termination for Convenience principles in accordance with FAR 49.2 through 49.6, as applicable."  Shegerghan Subcontract at ECC-000146 (ECF No. 20-10); Badghis Subcontract at ECC-000016 (ECF No. 20-11).  This information was presented to the Arbitrator and the subcontracts were admitted into the arbitral record.  Second, the FAR requires the use of the "total cost basis" when construction contracts are terminated.  FAR § 49.206-2(b)(4)(i); *see also Sandblasting & Coating, Inc.*, ASBCA No. 30873, 92-2 B.C.A. ¶ 24924 (the total cost basis must be used to determine termination costs for construction contracts).  Aspic never refutes this point.  Rather, Aspic only cites a more general FAR provision noting that the inventory method is "preferred."  This citation does not address, let alone refute, the more specific FAR guidance specific to construction contracts.  It is misleading for Aspic to represent to the Court that the "inventory method" is preferred without at least acknowledging the more specific FAR mandate regarding construction contracts.

Aspic also states that the Arbitrator found that the "inventory method" should be used as support for the correctness of this position.  This is circular logic.  The question is whether this decision was appropriate given the undisputed facts that the subcontracts and the FAR require the use of the "total cost" method.  It was not.  This decision is contrary to the undisputed facts and, therefore, also reflects a manifest disregard of the law and should be vacated.

**C.    <u>The Arbitrator Engaged In Misbehavior That Fundamentally Prejudiced ECC</u>**

The Arbitrator engaged in two acts of misbehavior that prejudiced ECC.  First, the Arbitrator's judgment was based upon a finding that the parties' lacked a meeting of the minds—an issue that was not in dispute and never presented to him or briefed by the parties.  Second, the Arbitrator included damages that Aspic waived and did not present any evidence to substantiate.  This misbehavior deprived ECC of a fundamentally fair arbitration process, requiring vacatur of the arbitral award.  9 U.S.C. § 10(a)(3); *Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152,

1158 (9th Cir. 2016) ("In determining whether an arbitrator's misbehavior or misconduct prejudiced the rights of the parties, [the Court] ask[s] whether the parties received a fundamentally fair hearing.").

1.       The Arbitrator Did Not Provide The Parties An Opportunity To Address Whether There Was A "Meeting of the Minds"

The Arbitrator's decision not to enforce the subcontracts' terms as written was based upon his determination that "[t]here was not a true meeting of the minds when the subcontract agreements were entered."   Interim Award at 3.   Neither ECC nor Aspic ever submitted the validity of the subcontracts to the Arbitrator or asserted that the parties did not have a meeting of the minds.   The idea that there was "no meeting of the minds" was raised by the Arbitrator *sua sponte* in the Interim Award.   This determination was dispositive to the Arbitrator's conclusion that Aspic would be relieved from complying with the subcontracts' "very detailed provisions relating to Federal regulations governing the work."   Resolving the arbitration on an issue that was never submitted to the Arbitrator and never raised, let alone briefed, by the parties deprived ECC of a fundamentally fair process.   ECC never had an opportunity to put on evidence regarding the parties' mutual understanding of the subcontracts' requirements or to brief the presumption in California law that contracts will be enforced as written.   The arbitral award, therefore, should be vacated.   9 U.S.C. § 10(a)(3); New York Convention, Art. V(1)(c) (refusal to enforce an arbitration award is proper when "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . .").

Aspic's response to ECC's argument misconstrue ECC's position.   Specifically, Aspic's response states that "ECC suggests that there was no contractual meeting of the minds."   Resp. at 7.   This is wrong.   ECC firmly believes there was a meeting of the minds and that the subcontracts' "very detailed provisions relating to Federal regulations governing the work" should have been enforced as written.   It was the Arbitrator—not ECC—who concluded there was no meeting of the minds.   This issue, however, was neither submitted to the Arbitrator nor argued by the parties and no evidence was ever introduced on this issue.   At a minimum, if the Arbitrator

was concerned there was no "meeting of the minds" he should have requested briefing on this issue.  It is the absence of an opportunity to address this issue that prejudiced ECC.

Critically, Aspic's response also states that "[i]f there were no meeting of the minds, then there was no contract, and therefore no agreement to arbitrate."  *Id.* Exactly.  This only further confirms that the Arbitrator's conclusion that there was no meeting of the minds was prejudicial to ECC and that the arbitral award was irrational and reflects a manifest disregard of the law.  The Court should vacate the award.

### 2.    The Arbitrator Included Waived Amounts In Aspic's Damages

Aspic waived its claim to certain damages during the arbitration hearing and never presented any evidence on these waived amounts.  This is confirmed in Aspic's Post-hearing Brief, which provided a summary of the claimed damages and cited the exhibits presented during the hearing that purportedly supported the damages; the waived damages are omitted from this summary.  ECC noted this waiver in its Response to Aspic's Post-hearing Brief (ECF No. 20-4).  Nevertheless, the Arbitrator included these waived amounts in his award to Aspic.  This prejudiced ECC because Aspic was awarded damages for amounts that were waived and for which no evidence was produced.  This resulted in an unfair proceeding that requires vacatur of the award.  9 U.S.C. § 10(a)(3); *Move, Inc.*, 840 F.3d at 1158.

Aspic's response in opposition is that ECC did not prove that amounts were waived and that even if amounts were waived, they were properly awarded to Aspic under the "jury verdict" method.  Resp. at 7.  Notwithstanding Aspic's assertion to the contrary, ECC demonstrated to the Arbitrator and the Court that Aspic waived certain damages in the arbitration.  Moreover, if Aspic's position is that ECC's assertion is wrong, one would expect Aspic to affirmatively state that it never waived any amounts.  It is quite telling that Aspic never makes this assertion.  Aspic's statement that ECC failed to account for the Arbitrator's use of the "jury verdict" method further confirms that Aspic waived certain damages; Aspic is essentially arguing that the jury verdict method somehow allows Aspic to recover waived amounts.  This is not the case.

Aspic cannot recover on amounts that it affirmatively waived during the arbitration under the "jury verdict" method or any other damages theory. *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1357 (Fed. Cir. 2001) ("We have also allowed so-called 'jury verdicts,' if there was clear proof of injury and there was no more reliable method for computing damages— but only where the evidence adduced was sufficient to enable a court or jury to make a fair and reasonable approximation.") (emphasis added).  Aspic's waiver meant that it was withdrawing from the arbitration its claim to these amounts.  Further, no evidence was introduced to substantiate these amounts, no testimony was elicited, and ECC never had an opportunity to cross-examine Aspic's witnesses regarding these costs.  This deprived ECC of a fundamentally fair process, requiring vacatur of the award.

## III.  CONCLUSION

Pursuant to the New York Convention, as implemented by the FAA, vacatur of the arbitral award is required in this case because the Arbitrator: (1) exceeded his power when issuing the award because the award is irrational and reflects a manifest disregard of the law; and (2) engaged in misbehavior that prejudiced ECC.

DATED:  March 3, 2017                    DENTONS US LLP


By:      */s/ Andrew S. Azarmi*
                    Andrew S. Azarmi
                    Attorneys for Defendants ECC CENTCOM
                    Constructors, LLC and ECC International, LLC

102662408\V-2

8